UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAVANNAH PARTIPILO,

    Plaintiff,

v.                                                       Case No: 8:22-cv-1461-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff Savannah Partipilo seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's (ALJ) decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A. Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits (DIB) on October 12, 2013. (Tr. 18, 1708, 1926.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 118–21, 127–30.) Upon Plaintiff's request, the ALJ held a hearing on April 13, 2016, at which Plaintiff appeared and testified. (Tr. 37–66, 141–43.) Following the hearing, the ALJ issued an unfavorable decision dated July 1, 2016, finding Plaintiff not disabled. (Tr. 15–36.)

Subsequently, Plaintiff requested a review from the Appeals Council, which the Appeals Council denied. (Tr. 1–6.) Plaintiff then timely filed a complaint in the United States District Court for the Northern District of Florida, and the case was remanded for further proceedings. (Tr. 1797–1822.) On August 19, 2020, the same ALJ held another hearing, and on November 3, 2020, issued a new decision finding Plaintiff not disabled and denying Plaintiff's claims for benefits. (Tr. 1684–1715, 1726–91.) On May 18, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's November 3, 2020 decision. (Tr. 1680–82.) Plaintiff then timely filed a complaint with this court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g).

      B.    **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1969, claimed disability beginning on July 1, 2008, later amended to April 1, 2012. (Tr. 194, 1687, 1706, 1749, 1934, 1954.) Plaintiff has one year of college education and past relevant work experience as a taxi driver, cashier, and dancer. (Tr. 200, 1706.) Plaintiff alleged disability due to scoliosis both thoracic and lumbar, acute renal failure, arachnoid cyst in spine caused neuropathy, spinal stenosis, bipolar, attention deficit disorder, depression, degenerative disc disease, neuropathy, and osteoarthritis. (Tr. 199.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since April 1, 2012, the amended alleged onset date. (Tr. 1689.) After conducting a hearing and reviewing the evidence of record, the ALJ

determined that Plaintiff had the following severe impairments: degenerative disc disease (DDD), history of thoracic arachnoid cyst status post-surgical removal, scoliosis, degenerative joint disease (DJD), history of adrenal insufficiency, asthma, affective disorder, anxiety disorder, and attention deficit disorder (ADD). (Tr. 1690.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 1690–94.) The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to

> perform sedentary work as defined in 20 CFR 404.1567(a) except she was limited to occasional climbing and balancing with no climbing of ladders, ropes or scaffolds; she would need to avoid concentrated exposure to extreme cold, extreme heat, vibration, and pulmonary irritants; and she would need to avoid even moderate exposure to hazards. She was further limited to simple routine tasks; occasional interaction with supervisors, coworkers and the public; and gradual change in a routine work setting.

(Tr. 1694.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 1695.)

Considering Plaintiff's RFC and the assessment of a vocational expert (VE), the ALJ determined that Plaintiff could not perform her past relevant work but could perform other jobs existing in significant numbers in the national economy, such as

escort vehicle driver, painter, and tube operator. (Tr. 1706–07.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 1708.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of

20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that

he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff's sole argument on appeal is whether the ALJ erred by relying on "unreliable and false" VE testimony. (Dkt. 19 at 3.) Plaintiff's argument is two-fold. First, Plaintiff argues that the VE overestimated the number of jobs in the national economy that Plaintiff could perform. (*Id.* at 4–5.) Second, Plaintiff challenges the VE's inability to explain the methodology that he used to arrive at that number. (*Id.* at 5–6.) The Commissioner responds that the ALJ reasonably relied on the VE's expertise, and that the VE's testimony constitutes substantial evidence supporting the ALJ's decision. (Dkt. 20 at 7–11.) For the reasons that follow, Plaintiff's contentions do not warrant reversal.

At step five of the sequential evaluation process, the ALJ bears the burden "for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [a claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). "The ALJ may satisfy this burden and provide this evidence through a VE's testimony." *Brooks v. Barnhart*, 133

F. App'x 669, 670 (11th Cir. 2005)[1] (citation omitted); *see also* 20 C.F.R. § 404.1566(e) (permitting the use of VEs to aid in determining the specific occupations a claimant can perform). VEs may use a variety of data sources and methodologies to generate job-number estimates. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152–53 (2019) (describing different types of data sources VEs may use); *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1284 (11th Cir. 2020) ("As far as we can tell from the cases and the literature, there are various methods available to a vocational expert, to be used in conjunction with his knowledge and expertise."). The Supreme Court held that a VE's job-numbers testimony may constitute substantial evidence even if the VE, upon request, refuses to disclose the underlying data on which the estimates were based. *Biestek*, 139 S. Ct. at 1157; *see also Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) ("The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony."). However, a VE may "offer testimony that is so feeble, or contradicted, that it would fail to clear the substantial-evidence bar." *Biestek*, 139 S. Ct. at 1155–56. The substantial evidence inquiry for VE testimony must proceed on a "case-by-case" basis, taking "into account all features of the vocational expert's testimony, as well as the rest of the administrative record." *Id*. at 1157.

Here, the VE testified that an individual with Plaintiff's age, education, work experience, and RFC could "perform the requirements of representative occupations

---

[1] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

- 7 -

such as escort vehicle driver (DOT 919.663-022), with approximately 600,000 positions in the national economy; painter (DOT 735.687-018), with approximately 12,000 positions in the national economy; and tube operator (DOT 239.687-014), with approximately 3,000 positions in the national economy." (Tr. 1706–07, 1777.) Following this testimony, Plaintiff's counsel asked: "On escort driver, how did you come up with . . . 600,000 full time escort drivers nationally?" (Tr. 1785.) The VE testified that he obtained those job numbers from Job Pro Browser, which he described as "estimates done by the Department of Labor" which "SkillTrans has gotten . . . and published them in that database." (Tr. 1785–86.) Plaintiff's counsel then objected to the VE's testimony "in regards to number of jobs, and especially for escort vehicle driver." (Tr. 1787.)

> In her decision, the ALJ overruled Plaintiff's objection, explaining:
>
> At the hearing and in a post-hearing brief (Ex. C20E), the claimant's representative objected to these job numbers on the ground that the vocational expert's methodology for determining numbers of jobs is not reliable and the numbers did not appear in Job Browser Pro per the representative. The undersigned overrules this objection. The vocational expert has professional knowledge and experience in job placement. Accordingly, the vocational expert's job information is found to be reliable.
>
> The regulations as currently written are clear on this matter. The Administrative Law Judge (ALJ) does not determine who qualifies as an expert witness. Rather, the Commissioner of the Social Security Administration (SSA) designates who qualifies to be a vocational expert (VE) (HALLEX I-2-5-48, I-2-5-52 and I-2-5-61). The Commissioner has not delegated the power to override the decision with regard to the qualifications of the VE to the ALJs. Despite the representatives' challenge to the VE's qualifications to provide testimony on job numbers in the lengthy arguments set forth in the post-hearing brief, the undersigned is bound to follow the law as it written. SSA has already

> determined that Mr. Cowart is qualified to testify as a VE; and the undersigned is permitted to ask the VE to provide the number of specific jobs identified in the national economy (HALLEX I-2-5-55).
>
> The representative argued that the VE's job number methodology is unreliable. However, in *Bryant v. Commissioner of Social Security*, 451 Fed. Appx. 838, 839 (11th Cir. 2012), the 11th Circuit held that "the social security regulations provide that an ALJ may rely on a [vocational expert's] knowledge and expertise, and they do not require a [vocational expert] to produce detailed reports or statistics in support of her testimony." Thus, the VE's expertise has already been established and no additional foundation or disclosure is required with regard to the testimony regarding job numbers. The undersigned recognizes Mr. Cowart as a VE who is fully qualified by the SSA guidelines and in accordance with the 11th Circuit.
>
> Further, the 11th Circuit has determined that a total of only 23,800 jobs in the national economy identified by the VE was based on substantial evidence and constitutes a significant number in the national economy. *Atha v. Commissioner, Social Security Administration*, 616 Fed. Appx. 931, 934-35 (11th Cir. 2015). Thus, assuming, arguendo, that the VE's job numbers are inaccurate, reducing them by 97 percent in this case would still result in 24,000 total jobs available to this claimant in the national economy, which the 11th Circuit has found to be significant.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the VE's testimony is consistent with the information contained in the Dictionary of Occupational Titles, as supplemented by his own professional education, training, experience, and research.

(Tr. 1707.)

Plaintiff first argues that the VE's "testimony is clearly and unmistakably wrong" because contrary to the VE's estimates, "SkillTran does not indicate there are 600,000 escort vehicle drivers nationally." (Dkt. 19 at 5.) Rather, Plaintiff argues that "[a]ccording to a publication from SkillTran, there are an estimated 33,927 escort vehicle drivers nationally. [sic] there are 2228 tube operator jobs and 29 painter jobs."

(*Id.*) Plaintiff contends that "[e]ither the vocational witness did not know how to use a Job Browser Pro, or falsely testified." (*Id.*)

While Plaintiff's job estimates differ substantially from those of the VE, the ALJ found that even "reducing them by 97 percent in this case would still result in 24,000 total jobs available to this claimant in the national economy, which the 11th Circuit has found to be significant." (Tr. 1707); *see Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 935 (11th Cir. 2015) (finding 23,800 jobs in national economy constituted a "significant number"); *Brooks*, 133 F. App'x at 671 (finding 840 jobs in the national economy constituted a significant number); *Best v. Comm'r of Soc. Sec.*, No. 2:17-cv-219-FtM-MRM, 2018 WL 3569255, at *7 (M.D. Fla. July 25, 2018) (finding 2,000 jobs constituted a significant number of jobs in the national economy). Moreover, "[t]he ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number." *Brooks*, 133 F. App'x at 670 (citation omitted); *see also Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021) ("Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ].") (quoting *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986)). And here, the ALJ made an independent factual determination that even reducing the number of positions would still result in a significant number of jobs that Plaintiff could perform. Accordingly, to the extent there was any error in the VE's job number estimate, such error was harmless as it would not contradict the ALJ's ultimate findings. *See Garrow*

*v. Saul*, No. 5:19-cv-586-Oc-18JBT, 2020 WL 5802493, at *5 (M.D. Fla. Aug. 19, 2020), *report and recommendation adopted*, 2020 WL 5797867 (M.D. Fla. Sept. 29, 2020) (finding any error harmless where the plaintiff provided contrary job estimates derived from Job Browser Pro because "[r]egardless of whether the VE's estimate was exact, the number of jobs that Plaintiff argues exists in the national economy (over 96,000) is still more than sufficient to constitute a significant number of jobs"); *see also Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Further, as the Commissioner points out, "the relevant inquiry before this Court is whether the VE's testimony constitutes substantial evidence supporting the ALJ's decision, not whether substantial evidence supports the VE's testimony." (Dkt. 20 at 7 (citing *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019).)  The VE, whose education and experience include a master's degree and over thirty years as a vocational rehabilitation counselor, and whose qualifications Plaintiff did not challenge (*see* Tr. 1775), repeatedly confirmed that his testimony was consistent with the Dictionary of Occupational Titles (DOT) and its companion publications.  (Tr. 1776–78, 1950–52.)  The ALJ found the VE's job information reliable based upon the VE's "professional knowledge and experience in job placement."  (Tr. 1707.) Accordingly, the VE's testimony constitutes substantial evidence upon which the ALJ

could rely. *See Bryant*, 451 F. App'x at 839; *see also Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) ("the Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise") (citing 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e), 416.960(b)(2), 416.966(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.")).

Finally, although Plaintiff's job number estimates could support a different conclusion, this court must affirm if the ALJ's decision is supported by substantial evidence. *See Bloodsworth*, 703 F.2d at 1239; *see also Feliciano v. Comm'r of Soc. Sec.*, No. 5:19-cv-428-Oc-18PRL, 2020 WL 5947878, at *3 (M.D. Fla. Sept. 3, 2020), *report and recommendation adopted*, 2020 WL 5946624 (M.D. Fla. Oct. 7, 2020) ("[T]he fact that job number data presented by Plaintiff might support an alternative finding is not itself determinative. This Court's job is not to reweigh the evidence; rather, it must affirm if substantial evidence supports the ALJ's decision even if the evidence was susceptible to more than one interpretation."); *De Lashmit v. Comm'r of Soc. Sec.*, No. 2:17-cv-363-FtM-99CM, 2018 WL 4610611, at *10 (M.D. Fla. July 19, 2018), *report and recommendation adopted*, 2018 WL 3954341 (M.D. Fla. Aug. 17, 2018) ("although the data presented by Plaintiff both to the Appeals Council and to this Court could support an alternative finding, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one"); *Davis v. Berryhill*, No. 17-cv-293-N, 2018 WL 2208432, at *7 (S.D. Ala. May 14, 2018)

("even assuming that the data from Job Browser Pro constitutes substantial evidence, the data would only support an alternative finding regarding the number of jobs available for plaintiff in the economy"). Accordingly, the ALJ did not err in relying upon the VE's testimony.

Second, Plaintiff argues that "even if, arguendo, the vocational witness relied on information provided by SkillTran, when asked about her (sic) methodology in estimating the job numbers, the vocational witness could not explain the methodology." (Dkt. 19 at 5.) Plaintiff relies on *Milner v. Kijakazi*, No. cv 20-1016 KK, 2022 WL 1125402 (D.N.M. Apr. 15, 2022), an unpublished district court decision from outside this Circuit, for the proposition that a VE's reliance on SkillTRAN alone is not sufficient to constitute reliable testimony.

Contrary to Plaintiff's assertion that the VE "could not explain the methodology[,]" (Dkt. 19 at 5), the VE explained that "the Department of Labor has done some estimates, . . . [a]nd SkillTrans has gotten that information from the Department of Labor, . . . and published them in that database." (Tr. 1785–86.) This demonstrates that the VE understood SkillTRAN's methodology. *See Frankie M. v. Kijakazi*, No. 1:20-cv-228-JVB, 2022 WL 168094, at *2 (N.D. Ind. Jan. 19, 2022) (finding that the VE's testimony regarding job numbers was sufficiently reliable, where "[t]he VE used the SkillTRAN program, which is accepted in the field, and the VE was able to descriptively, though not mathematically, explain how the program derived its estimates of job numbers").

Moreover, the Eleventh Circuit has endorsed Job Browser Pro as an acceptable method for a VE to assess job numbers. *See Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1284 (11th Cir. 2020) (explaining that one method for estimating job numbers is "the occupational density method" which "approximates job numbers using a software program known as JobBrowser Pro from SkillTRAN, which interprets available data"); *Breaux v. Comm'r of Soc. Sec.*, No. 20-21917-CIV, 2021 WL 3721547, at *2 (S.D. Fla. Aug. 23, 2021) ("Contrary to Plaintiff's position, the Eleventh Circuit has endorsed Job Browser Pro as a tool for interpreting and presenting jobs data.") (citing *Goode*, 966 F.3d at 1284); *Eminisor v. Comm'r of Soc. Sec.*, No. 3:19-cv-974-J-PDB, 2020 WL 5810237, at *6 (M.D. Fla. Sept. 30, 2020) ("The vocational expert's use of Job Browser Pro does not diminish the reliability of his testimony. Even if he did not know exactly how Job Browser Pro determines the percentages, Job Browser Pro is used by most vocational consultants he knows, indicating its reliability as a way to determine job numbers."). Moreover, the VE's education and over thirty years' experience as a counselor in vocational rehabilitation provide an adequate basis for relying on his testimony regarding using SkillTRAN.

In sum, the evidence here constitutes "more than a mere scintilla[,]" *see Biestek*, 139 S. Ct. at 1154, and provides an adequate foundation for the VE's job estimates. Accordingly, the ALJ properly relied on the VE's testimony to conclude that a substantial number of jobs exist in the national economy that Plaintiff could perform, and her decision is supported by substantial evidence.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on July 6, 2023.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record